**THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **MOHAMMED ABUHARBA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 3:23-cv-03834-GCS** |
| | ) | |
| | ) | |
| **NATHAN MCCARTHY, JOSHUA SCHOENBECK, ANTHONY JONES, ANTHONY WILLS,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM & ORDER**

**SISON, Magistrate Judge:**

## Introduction and Background

Plaintiff Mohammed Abuharba, an inmate of the Illinois Department of Corrections ("IDOC"), brings this suit under 42 U.S.C. § 1983. (Doc. 1). Abuharba alleges that Defendants Nathan McCarthy, Joshua Schoenbeck, Anthony Jones, and Anthony Wills violated his due process rights by issuing him a false disciplinary ticket. (Doc. 13, p. 6). For the reasons set forth below, the Court **GRANTS** Defendants' Motion for Summary Judgment.

## Procedural Background

Abuharba filed this lawsuit on December 5, 2023. (Doc. 1). The Court screened Abuharba's complaint pursuant to 28 U.S.C. § 1915A and allowed the case to proceed on one claim:

**Count 1: Fourteenth Amendment due process claim against Nathan**

> **McCarthy, Joshua Schoenbeck, Anthony Jones, [and] Anthony Wills [] for issuing Abuharba a false disciplinary ticket.**

(Doc. 13, p. 3, 6).[1]

The Defendants filed a Motion for Summary Judgment and Memorandum in Support on October 6, 2025. (Doc. 91, 92). Abuharba filed his response in opposition on March 12, 2026. (Doc. 104). The Defendants filed a reply in support of their motion for summary judgment on April 23, 2026. (Doc. 107).

## FACTUAL BACKGROUND

The following facts are taken from the record and presented in the light most favorable to Abuharba, the non-moving party, and all reasonable inferences are drawn in his favor. *See Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).

At all times relevant to this case, Abuharba was an inmate at Menard Correctional Center ("Menard"). (Doc. 1, p. 3). On December 9, 2021, Abuharba was outside for recreational time when officials at Menard conducted a tactical shakedown of his cell. (Doc. 92-1, p. 7) At the end of recreational time, prison officers called out several cell numbers, including Abuharba's. *Id*. The inmates assigned to the named cells were taken directly to segregated housing. *Id*. at p. 7-8. After he was taken to segregation, Abuharba received a disciplinary ticket for attempt/dangerous contraband and damage or misuse of property for attempting to make weapons from metal taken from fixtures in his cell. (Doc. 92-5, p. 3-4; Doc. 92-1, p. 9-10). Abuharba acknowledges that there were missing

1 The Court dismissed Count 1 against Yvette Baker and Adewale Kuforiji.

sections of metal in the cell consistent with someone trying to make weapons but maintains that it happened before he moved into the cell and that he was not involved. (Doc. 92-1, p. 9-10, 12-14).

Menard's Adjustment Committee held a hearing on the disciplinary ticket on December 14, 2021. (Doc. 92-1, p. 10). The hearing was very brief, but Abuharba was able to speak and to make a written submission. *Id*. Abuharba knew that he had been found guilty of the charged offenses the next day because he was not released. *Id.* He did not receive a copy of the summary of proceedings until seven weeks later. (Doc. 92-5, p. 1-2; Doc. 92-1, p. 10). The summary of proceedings accepted the factual allegations in the disciplinary report as true. The disciplinary report, written by Defendant McCarthy, established that Abuharba had removed metal from fixtures in his cell "based on evidence obtained during the investigation by [Illinois Department of Corrections] staff." (Doc. 92-5, p. 4). It did not provide or describe that evidence. *Id*.

In segregation, Abuharba was placed in a cell that contained rust and mold. (Doc. 92-1, p. 12; Doc. 104, p. 11). It also had a light outside of the cell that was always on. (Doc. 104, p. 11). He was only allowed to shower once a week and had no recreation time for the first ninety days that he was in segregation. Finally, Abuharba alleges that the light caused him sleep deprivation and that not being permitted recreational time exacerbated his arthritis. (Doc. 104, p. 11).

## LEGAL STANDARDS

Summary judgment is proper when the pleadings and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law." *Gupta v. Melloh*, 19 F.4th 990, 997 (7th Cir. 2021) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986)); FED. R. CIV. PROC. 56(a). The movant bears the burden of establishing the absence of a genuine issue as to any material fact and entitlement to judgment as a matter of law. *See Quinn v. Wexford Health Sources, Inc.*, 8 F.4th 557, 567 (7th Cir. 2021) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). This Court must consider the entire record, drawing reasonable inferences and resolving factual disputes in favor of the non-movant. *See Fletcher v. Doig,* 145 F.4th 756, 764 (7th Cir. 2025). *See also Bishop v. Air Line Pilots Association International,* 5 F.4th 684, 693 (7th Cir. 2021) (stating that "we are not required to draw every conceivable inference from the record . . . but 'only those inferences that are reasonable.'") (citations omitted). Summary judgment is also appropriate if a plaintiff cannot make a showing of an essential element of his claim. *See Celotex*, 477 U.S. at 322. While the Court may not "weigh evidence or engage in factfinding[,]" it must determine if a genuine issue remains for trial. *Lewis v. City of Chicago*, 496 F.3d 645, 651 (7th Cir. 2007).

In response to a motion for summary judgment, the non-movant may not simply rest on the allegations in his pleadings; rather, he must show through specific evidence that an issue of fact remains on matters for which he bears the burden of proof at trial. *See Knight v. Wiseman,* 590 F.3d 458, 463 (7th Cir. 2009); *Abrego v. Wilkie*, 907 F.3d 1004, 1012 (7th Cir. 2018). No issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party . . . if the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–250 (citations omitted); *Smith v. City of Janesville,* 40 F.4th 816,

821 (7th Cir. 2022); *Doxtator v. O'Brien,* 39 F.4th 852, 860 (7th Cir. 2022). In other words, "inferences relying on mere speculation or conjecture will not suffice." *DiPerna v. Chicago School of Professional Psychology,* 893 F.3d 1001, 1006 (7th Cir. 2018) (citation omitted); *see also Anderson*, 477 U.S. at 252 (finding that "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]"). Instead, the non-moving party must present "definite, competent evidence to rebut the [summary judgment] motion." *Burton v. Kohn L. Firm, S.C.,* 934 F.3d 572, 579 (7th Cir. 2019) (citation omitted).

## Discussion

The Court engages in a two-step analysis when evaluating a due process claim under the Fourteenth Amendment. First, the Court determines whether the plaintiff has been deprived of a protected interest. If so, the Court determines what process was due to the plaintiff under the circumstances of his case. *See Isby v. Brown*, 856 F.3d 508 (7th Cir. 2017). Avoiding segregated confinement constitutes a protected interest where it amounts to an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Lisle v. Welborn*, 933 F.3d 705, 720 (7th Cir. 2019). In determining the existence of a protected liberty interest in avoiding segregated confinement, the Court analyzes "the combined import of the duration of the segregative confinement *and* the conditions endured by the prisoner during that period." *Marion v. Columbia Correction Inst.*, 559 F.3d 693, 698 (7th Cir. 2009) (emphasis in original). Because the Court concludes that Abuharba was not deprived of a protected liberty interest, it does not reach the question of whether he received the

process due to him.

### A. Abuharba's Term of Segregation Requires an Inquiry into the Conditions of his Confinement.

Defendants, relying on *Marion*, contend that "terms of segregated confinement of six months or less generally do not violate due process." (Doc. 92, p. 10). But the Seventh Circuit has said that this is not the case. *See, e.g.*, *Jackson v. Anastasio*, 150 F.4th 851, 862 (7th Cir. 2025) (noting that by 2020, "for almost any term of disciplinary segregation measured in months, consideration of the conditions of confinement was required to determine whether a liberty interest existed."); *Kervin v. Barnes*, 787 F.3d 833, 836-837 (7th Cir. 2015) (rejecting claim that "a rigid six-month period of inhuman confinement is a condition precedent to a deprivation of a prisoner's constitutionally protected liberty . . . Six months is not an apt presumptive minimum for establishing a violation."). The court also found that the district judge had erred by suggesting that such a minimum applied. *Id*.

Nor does *Marion* itself support Defendants' position. The Seventh Circuit did indicate that a six-month term of segregation might not give rise to a protected liberty interest based on duration alone. *See Marion*, 559 F.3d at 698. But it went on to note that, if a term of segregated confinement is long enough, it is necessary to inquire into the conditions of that confinement to determine if a liberty interest is at stake. *Id.* at 697-98. It further explained that cases where no liberty interest was found, and which did not inquire into conditions of confinement, "involve[d] relatively short periods of segregation," all of which were ninety days or fewer. *Id*. at p. 697 and n.2. Furthermore,

a six-month term of segregation was long enough to require an inquiry into conditions of confinement. *Id.* at p. 698 (discussing *Whitford v. Boglino*, 63 F.3d 527 (7th Cir. 1995)). Abuharba's term of confinement in segregation — 120 days — is not so short that the Court will find against Abuharba without looking into the conditions of his confinement in segregation.

**B. Abuharba has not shown that his confinement in segregation implicates a protected liberty interest.**

Abuharba's conditions of confinement, even viewed in the light most favorable to him, do not give rise to a protected liberty interest. Abuharba claims that he was denied recreation time for ninety days, housed in a rusty and moldy cell, prevented from showering for one week, and subjected to lighting twenty-four hours per day. (Doc. 104, p. 6). Abuharba further alleges the denial of recreation caused him to suffer from exacerbated arthritis and the lighting caused sleep deprivation. *Id*. The Court will address these allegations in turn.

*i. Abuharba has not supported his claims that he suffered from arthritis or sleep deprivation.*

A reasonable jury could not conclude that Abuharba suffers (or suffered) from exacerbated arthritis or sleep deprivation because of his confinement in segregation. To survive summary judgment, the nonmoving party must point to specific evidence in the record to support his factual positions. *See* FED. R. CIV. P. 56(c)(1). *See also Hill v. Tangherlini*, 724 F.3d 965, 967 (7th Cir. 2013) (noting that district court should have considered statements as evidence where plaintiff testified to specific facts). Vague

descriptions do not suffice. *See, e.g.*, *Lisle*, 933 F.3d at 721 (noting that "vague description" of [plaintiff's] cell, including rust on the bars and 'corroded feces' in the toilet, does not itself reveal much."); *cf. Jackson*, 150 F.4th at 861 (noting that plaintiff's description of conditions of confinement implicated a liberty interest where description was "described more specifically" than in *Lisle*).

Abuharba has not cited to sufficient and specific evidence in the record to support his claim that he suffered from exacerbated arthritis and sleep deprivation. He cites to three documents to support his claims that he suffered from these conditions: his complaint, his deposition, and an affidavit that he submitted with his response to Defendants' Motion for Summary Judgment. (Doc. 104, p. 6). None of these documents, however, provide evidence to support his claims. Abuharba's complaint contains allegations, but it does not contain facts that support those allegations. (Doc. 1). Moreover, relying on allegations in the complaint is not sufficient at this stage of the case.

The deposition does not help Abuharba, either. He did not discuss arthritis or sleep deprivation in the sections of the deposition to which he cites.[2] (Doc. 104, p. 6). The same is true of citations to the deposition in the affidavit: Abuharba cites to a paragraph that does not mention either issue. *Id.* at p. 6, 12-13. One sentence in a different part of the

---

[2] Abuharba cites to two excerpts from his deposition. (Doc. 104, p. 25, 27-28). Both concern similarities between disciplinary tickets that Abuharba received and that other inmates received and the manner in which they received them. Neither excerpt mentions arthritis or sleep deprivation. The Court further notes that "[j]udges are not like pigs, hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). While the Court examined the record, it was Abuharba's responsibility to cite to evidence in support of his factual positions, and he failed to do so here.

affidavit mentions arthritis and sleep deprivation, but it then cites back to portions of Abuharba's deposition that do not mention either of those things. *Id*. at p. 8, 11, 12. The deposition does not establish a genuine dispute of material fact as to whether Abuharba suffered from arthritis or sleep deprivation because of his confinement in segregation.

Lastly, Abuharba's affidavit, standing alone, does not permit the reasonable inference that Abuharba suffered from exacerbated arthritis or sleep deprivation due to his confinement in segregation. The affidavit merely repeats the complaint's allegation that Abuharba suffered from exacerbated arthritis and sleep deprivation because he was denied recreation time and because there was a light outside of his cell that was always on. (Doc. 104, p. 11). There is no significant detail beyond these assertions: Abuharba does not describe his symptoms, how his conditions of confinement caused the issues, whether he sought or received medical treatment, or how (or if) these issues still affect him. This is simply not enough information for a reasonable jury to conclude that Plaintiff suffered from exacerbated arthritis and sleep deprivation as a result of his term in segregation.[3] Although the Court must view the facts in the light most favorable to Abuharba, he bears the burden of producing evidence sufficient to defeat summary judgment. *See Marion v. Radtke*, 641 F.3d 874, 876-877 (7th Cir. 2011). Abuharba has not done so regarding his claims that he suffered from exacerbated arthritis and sleep deprivation due to his term in segregated housing. Accordingly, the Court finds that

---

[3] The lack of detail is particularly damaging to Abuharba's claim because it hinders the Court's ability to compare the conditions of confinement in segregation and to determine whether they represented a dramatic departure from, or were substantially worse than, the ordinary conditions of prison life.

Abuharba has not properly supported his factual claim and considers it undisputed for purposes of this Order that he did not suffer from these conditions. *See* FED. R. CIV. PROC. 56(e)(2).

ii. *The conditions of Abuharba's confinement do not give rise to a protected liberty interest.*

Abuharba's claim thus comes down to whether rust and mold in his cell, being prevented from showering from one week, and being deprived of recreational time for ninety days, taken together with his four-month term of segregation, imposed an "atypical and significant hardship." *Sandin*, 515 U.S. at 484. An atypical and significant hardship is one that amounts to a dramatic departure from the ordinary conditions of prison life. *Id.*; *see also Marion*, 641 F.3d at 875-876. "In short, if the disciplinary measures do not 'substantially worsen the conditions of confinement of an inmate,' then he has not been deprived of a protected liberty interest." *Lisle v. Wellborn*, 933 F.3d 705, 721 (quoting *Miller v. Dobier*, 634 F.3d 412, 414-415 (7th Cir. 2011)).

Abuharba has not shown that a reasonable jury could conclude that his conditions of confinement were an atypical and significant hardship. The Seventh Circuit has distinguished between "disgusting conditions" and conditions that, "although restrictive, were not unsanitary or otherwise disgusting." *Jackson v. Anastasio*, 150 F.4th 851, 860 (7th Cir. 2025) (citing *Kervin*, 787 F.3d at 836). In *Jackson*, the plaintiff raised a genuine dispute of material fact because he was confined in a cell that had urine and feces smeared on the walls, that had water contaminated with bacteria that causes Legionnaire's disease, that was infested with vermin, and that was subject to constant

noise from other inmates banging on cell doors. 150 F.4th at 855, 860. *See also Taylor v. Riojas*, 592 U.S. 7, 7 (2020) (noting that conditions of confinement were "deplorable" where inmate was first placed in cell covered in feces and then placed in frigid cell prone to flooding that lacked toilet or bunk).

On the other hand, restrictive conditions of confinement in segregation have not been found sufficient to permit an inference of atypical and significant hardship. *See Lisle*, 933 F.3d at 711, 721 (involving four months of segregation in cell with rusty bars and corroded feces in toilet that plaintiff lacked supplies to clean); *Hardaway v. Meyerhoff*, 734 F.3d 740, 742, 744 (7th Cir. 2013) (involving six months of segregation where inmate was attacked by cellmate and was allowed out once per week to shower and use prison yard); *McCoy v. Atherton*, No. 18-1086, 818 Fed. Appx. 538, 541 (7th Cir. July 2, 2020) (involving ninety days in dirty cell near physically and mentally ill inmates). S*ee also Harris v. Fleming*, 839 F.2d 1232, 1236 (7th Cir. 1988) (noting that deprivation of yard time for four weeks at Menard was not an atypical or significant hardship because inmate could exercise in cell). Abuharba's conditions of confinement, taken together, are analogous to the conditions in *Lisle*, *Hardaway*, *McCoy*, and *Harris*, and the law is clear that they do not amount to an atypical or significant hardship. This does not mean that the conditions of confinement that Abuharba suffered are acceptable, *see Lisle*, 933 F.3d at 721, but they do not give rise to a protected liberty interest under the Due Process Clause.

Because the Court finds that Abuharba's conditions of confinement do not implicate a liberty interest, it does not reach the remaining issues raised by the parties.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment. The Court **DIRECTS** the Clerk to close the case and enter judgment in favor of Defendants.

**IT IS SO ORDERED.**

**DATED: September 29, 2026.**

Gilbert C. Sison

Digitally signed by Judge Sison
Date: 2026.09.29 11:16:00 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**